IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

CHARLES WHITTED,

                        Plaintiff,              Civil Action No.
    v.                                          05-CV-748 (TJM/DEP)

GEORGE PATAKI, *et al.*,

                        Defendants.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

CHARLES WHITTED, *pro se*

FOR DEFENDANTS:

HON. ELIOT SPITZER                    SENTA B. SIUDA
Attorney General of                   Assistant Attorney General
the State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2465

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

        Plaintiff Charles Whitted, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.  In essence, plaintiff's complaint represents an indictment of both New York Governor George Pataki's policies regarding release of violent felons on parole and the process which led to the denial of Whitted's request for release on parole.  Plaintiff challenges a decision made in November of 2004 to deny him parole, contending that it was based upon the Parole Board's focus on his crime of conviction, as opposed to other, mitigating factors including whether he has been successfully rehabilitated.  Plaintiff also asserts that his parole records have been falsified to reflect his status as a sex offender.  Plaintiff's complaint seeks the recovery of damages, both punitive and compensatory, as well as injunctive relief.

In response to plaintiff's complaint, defendants have moved seeking its dismissal arguing, *inter alia*, that plaintiff's allegations with regard to denial of parole fail to adequately plead a cause of action under 42 U.S.C. § 1983, and that his sole recourse for presenting the claims now raised is through petition for habeas relief under 28 U.S.C. § 2254.  Defendants further claim that the Eleventh Amendment protects each of them from being sued in their official capacities, and certain of the defendants additionally claim entitlement to absolute immunity by virtue of their

2

positions as parole officials.

While I find that plaintiff is not foreclosed from pursuing claims under section 1983 under the circumstances now presented, I nonetheless recommend a finding that his complaint fails to assert a cognizable, constitutional violation and, additionally, that the parole board defendants are entitled to absolute immunity from suit.  Accordingly, I recommend that defendants' motion be granted and plaintiff's complaint dismissed in its entirety.

I.    BACKGROUND[1]

Plaintiff is a prison inmate who was entrusted at the relevant times to the care and custody of the New York State Department of Correctional Services ("DOCS").  *See* Complaint (Dkt. No. 1).  Plaintiff's incarceration is the result of state court convictions of kidnapping in the first and second degrees, robbery, burglary in the first and second degrees, grand larceny, and unlawful imprisonment.  *Id.* Attachments (July 15, 2004 Parole Decision).  Various of those convictions reportedly stem from plaintiff's

---

[1]     In light of the procedural posture of the case, the following recitation is drawn from plaintiff's complaint, which is interpreted in a light most favorable to him, with all inferences drawn and ambiguities resolved in his favor. *Donhauser v. Goord*, 314 F.Supp.2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).

escape from the Westchester County Jail and the taking and holding of multiple hostages, including children, utilizing a weapon during the course of that encounter.  *Id.* Attachments (September 17, 2004 Letter to Parole Appeals Unit).

On November 3, 2004, while confined within the Coxsackie Correctional Facility ("Coxsackie"), located in Coxsackie, New York, plaintiff attended a parole board hearing – his fourth such hearing. Complaint (Dkt. No. 1) at 1.  Presiding at that hearing were defendants Vanessa Clarke, Daizee D. Bouey and Thomas Grant, each of whom is alleged to be a member of the New York State Board of Parole.  *Id.* at 4. Plaintiff asserts that he was denied a fair and impartial parole hearing because of the undue influence of defendant Governor George Pataki and his "crusade to abolish parole for all Violent and Convicted Felons," resulting in a denial of parole without consideration of his ultimate fitness and rehabilitation.  *Id.* at 1-2, 4-5.

Among the matters considered by the panel during the November 3, 2004 hearing was an Inmate Summary Report prepared with input from defendants Myra Palmer and Kenneth Wegman, both of whom are facility parole officers at Coxsackie.  Complaint (Dkt. No. 1) at 2-3.  In that Inmate

4

Summary Report plaintiff is described as a sex offender, as that term is defined under New York's Sex Offender Registration Act ("SORA"), N.Y. Correction Law § 168 *et seq.*  Complaint (Dkt. No. 1) at 2-3.  Based upon that designation plaintiff was informed by defendant Alan Kolodny, the facility guidance counselor and coordinator of the facility sex offender program at Coxsackie, that unless he enrolled in a sex offender program he "would never be released on parole."  *Id.* at 3.  Plaintiff maintains that the sex offender label is inappropriate, in that he has never been convicted of any crime implicating sexual misconduct.  *Id.*

Plaintiff appealed the November, 2004 parole denial to the New York State Parole Appeals Unit, comprised of defendants Livio Lazarri, Debra Loomis, and R. Guy Vizzie, Jr., all of whom are listed in plaintiff's complaint as parole commissioners.  Complaint (Dkt. No. 1) at 6.  The Board's unfavorable parole decision was upheld on that appeal.  *Id.*

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on June 14, 2005.  Dkt. No. 1. Named as defendants in plaintiff's complaint are New York State Governor George Pataki; New York State Parole Board Chairman Robert Dennison; Myra Palmer and Kenneth Wegman, Facility Parole Officers at

5

Coxsackie; Allen Kolodny, a facility guidance counselor at Coxsackie; and Venessa Clark, Daizee Bouey, Thomas Grant, Livio Lazzari, Debra Loomis and R. Guy Vizzie, Jr., all of whom are commissioners with the New York State Board of Parole.  Plaintiff's complaint asserts four causes of action, including claims 1) against defendant Pataki for violation of due process and equal protection, based upon the Governor's effort to abolish parole for violent felons; 2) against defendants Palmer, Wegman and Kolodny, alleging deprivation of plaintiff's substantive due process and equal protection rights as a result of the inclusion of false information, relating to his label of sex offender, in his prison records; 3) against defendants Clarke and Bouey, based upon the denial of parole, and against defendant Dennison based upon his failure to take any action to prevent the constitutional deprivations alleged; and 4) against defendants Lazzari, Loomis and Vizzie for "condoning" the constitutional violations by affirming the denial of plaintiff's application for parole.

In lieu of answering, defendants jointly moved on October 13, 2005, seeking dismissal of plaintiff's claims against them.  Dkt. No. 26.  In their motion, defendants have raised a variety of arguments, maintaining that 1) plaintiff's claims are not cognizable under section 1983, his sole recourse in this court being limited to the filing of a petition seeking

habeas relief; 2) plaintiff cannot recover compensatory damages for mental anguish and emotional distress, in light of his failure to plead the existence of any physical injury resulting from defendants' actions; 3) plaintiff's procedural due process claims lack merit, since in New York prisoners do not have a constitutionally cognizable liberty interest in being granted parole; 4) plaintiff's claim against the defendants in their official capacities are barred by the Eleventh Amendment; 5) plaintiff's claims against Governor Pataki are unduly conclusory, and fail to assert his personal involvement in any constitutional violations; 6) each of the named defendants employed by the New York State Parole Board is entitled to absolute immunity; 7) plaintiff's claims regarding mislabeling are frivolous, since by his own admission he has been convicted of a crime requiring registration under the SORA; and 8) plaintiff's equal protection claims are without merit, since he has failed to identify that he is a member of any protected group.  Additionally, defendants assert that in light of the patent futility of plaintiff's claims he should be denied leave to replead.  Plaintiff has since responded to defendants' motion in a submission filed with the court on November 23, 2005.  Dkt. No. 35.

Defendants' motion, which is now ripe for determination, has been

7

referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, applying a standard which is neither controversial nor rigorous in its requirements.  Under that provision, a court may not dismiss a complaint unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him [or her] to relief.'"  *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper*, 378 U.S. at 546, 84 S. Ct. at 1734; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.) (citation omitted), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005)

(Kahn, J.).  The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing rules require only that the defendant be afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley*, 355 U.S. at 47, 78 S. Ct. at 103; *see Phillips v. Girdich*, 408 F.3d 124, 127-29 (2d Cir. 2005).

When assessing the sufficiency of a complaint against this backdrop, particular deference must be afforded to a *pro se* litigant; a court must generously construe a *pro se* plaintiff's complaint when determining whether it states a cognizable cause of action.  *Davis*, 320 F.3d at 350 (citations omitted).  A complaint drafted by an uncounselled plaintiff should not be dismissed unless "it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations."  *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997) (citation omitted).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim could potentially be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

9

   B.   Section 1983 Claim Based Upon Parole Denial

At the heart of plaintiff's claims are actions which were taken with regard to his November, 2004 parole hearing and his appeal of the resulting, unfavorable decision.  In reliance upon *Preiser v. Rodriguez*, 411 U.S. 475, 93 S. Ct. 1827 (1973), defendants argue that plaintiff's sole recourse for presenting constitutional claims arising from those proceedings is to petition for habeas relief, and as such his claims are not cognizable under 42 U.S.C. § 1983.  Plaintiff counters by arguing that because he does not seek to challenge the fact or duration of his physical imprisonment or seek earlier release from prison, his section 1983 claims are not barred under *Preiser.*

It is true that in *Preiser* the Supreme Court squarely held that a civil rights action under section 1983 is an inappropriate mechanism for challenging a parole denial.  *Preiser*, 411 U.S. at 500, 93 S. Ct. at 1841; *see Fox v. Minute*, No. 00-CV-06098, 2000 U.S. Dist. LEXIS 20021, at *6-*7 (W.D.N.Y. July 21, 2000) (citing *Preiser*).  Significantly, however, in *Preiser* the Court limited the applicability of its holding to instances where "a state prisoner is challenging the very fact or duration of his [or her] physical imprisonment, *and* the relief he [or she] seeks is a determination

10

that he [or she] is entitled to immediate release or a speedier release from [prison.]"  411 U.S. at 500, 93 S. Ct. at 1841 (emphasis in original).

In a relatively recent decision, the United States Supreme Court had occasion to revisit the issue of whether a section 1983 action may properly be brought by an inmate challenging the procedures followed to deny parole eligibility and suitability.  *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. 1242 (2005).  In *Wilkinson*, the Court traced the history of its decisions involving the interplay between civil rights actions under 42 U.S.C. § 1983 and petitions seeking habeas relief in cases impacting upon a prisoner's duration of confinement, including *Preiser* (seeking restoration of good time credits); *Wolff v. McDonnell*, 418 U.S. 539, 553, 94 S. Ct. 2963, 2973 (1974) (challenging constitutionally deficient disciplinary proceedings which led to the denial of good time credits); *Heck v. Humphrey*, 512 U.S. 477, 479, 114 S. Ct. 2364, 2368 (1994) (seeking damages which, if granted, would imply invalidity of conviction or sentence); and *Edwards v. Balisok*, 520 U.S. 641, 643, 117 S. Ct. 1584, 1586 (1997) (seeking declaration that the procedure employed by state officials depriving the inmate of good time credit was unconstitutional).  *Wilkinson*, 544 U.S. at 78-83, 125 S. Ct. at 1246-48.  The Court

11

determined that, taken together, the holdings in those cases stand for the

proposition that

> a state prisoner's §1983 action is barred (absent
> prior invalidation) . . . no matter the relief sought
> (damages or equitable relief), no matter the target
> of the prisoner's suit (state conduct leading to
> conviction or internal prison proceedings) – *if*
> success in that action would necessarily
> demonstrate the invalidity of confinement or its
> duration.

*Id.* at 81-82, 525 S. Ct. at 1248 (emphasis in original).  Applying this

standard to the claims raised by the plaintiffs in *Wilkinson*, the Court

concluded that because the relief sought would not result in immediate or

speedier release, or demonstrate the invalidity of the plaintiff's

confinement, the claims were cognizable under section 1983.  *Id.*

When examined against this backdrop, it is clear that plaintiff's

claims are properly brought under 42 U.S.C § 1983.  The injunctive

component of plaintiff's request for relief seeks an order 1) prohibiting

defendant Pataki from continuing to influence the New York State Board

of Parole to deny parole to convicted felons; 2) requiring defendants

Palmer, Wegman, and Kolondy to correct the false entry contained in

plaintiff's parole records; 3) directing defendant Dennison to implement

corrective measures to ensure that future parole board hearings are

conducted in compliance with New York Executive Law; and 4) mandating

a new parole hearing in plaintiff's case, to be held in compliance with the

Executive Law and with the result to be based on his rehabilitation and

ultimate fitness for release at the present time.[2]  As such, as in *Wilkinson*,

plaintiff's success in obtaining the requested relief would not necessarily

lead to an immediate or speedier release from prison, or demonstrate the

invalidity of his confinement.  Instead, in the event plaintiff were to

succeed in connection with this claim, the injunctive component of the

relief to be awarded would go only so far as to provide an opportunity for

him to reappear before the parole board for a *de novo* hearing based on a

corrected record with respect to his sex offender status, and conducted in

accordance with New York State parole guidelines.  As an initial,

threshold matter, I therefore recommend a finding that plaintiff has not

failed to state a cognizable claim under 42 U.S.C. § 1983 based upon

*Preiser*.

    C.   Eleventh Amendment

    In his complaint plaintiff has named various government officials

---

[2]    In addition to seeking equitable relief, plaintiff has requested compensatory and punitive damages from each of the defendants.  *See* Complaint (Dkt. No. 1) at 8-10.

and employees as defendants, both individually and in their official capacities.  Defendants seek dismissal of plaintiff's claims against them in their official capacities, arguing that such claims are in effect claims for damages against the State.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued for damages in their official capacities, when the essence of the claim involved is one against a state as the real party in interest.[3]  *Richards v. State of New York Appellate Division, Second Department*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled

---

[3]     This portion of defendants' motion implicates, in a broader sense, the sovereign immunity enjoyed by the State.  As the Supreme Court has recently reaffirmed, however, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County, Ga.*, ___ U.S. ___, 126 S. Ct. 1689, 1693 (2006).

to invoke the Eleventh Amendment immunity belonging to the state."[4]

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's section 1983 damage claims against Governor Pataki, certain defendants at Coxsackie Correctional Facility, and the various New York State Division of Parole employees named in plaintiff's complaint are in reality claims against the State of New York, they typify those against which the Eleventh Amendment protects, and are thus subject to dismissal.  *Daisernia v. State of New York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).  I therefore recommend dismissal of plaintiff's claims for damages as against the defendants, to the extent they are named in their official capacities.[5]

    D.    Recovery of Compensatory Damages

In his prayer for relief plaintiff requests recovery of compensatory

---

[4]    By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

[5]    To the extent that plaintiff's claims seek injunctive relief against the defendants in their official capacities, such claims are appropriately maintained and are not subject to dismissal under the Eleventh Amendment.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 & n. 10, 109 S. Ct. 2304, 2312 & n.10 (1989).

damages for mental stress and anguish.  In their motion, defendants challenge Whitted's entitlement to recover such damages in connection with the claims set forth in his complaint, based upon his failure to plead that he suffered physical injury as a result of the disputed conduct.

42 U.S.C. 1997e(e), enacted as part of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), provides in relevant part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional factility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This provision includes within its purview alleged constitutional violations.  *Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002); *Petty v. Goord*, No. 00 Civ. 802, 2002 WL 31458240, at *8-9 (S.D.N.Y. 2002).

Since plaintiff's complaint fails to assert that he suffered physical injury resulting from the acts complained of, he is not entitled to recover compensatory damages for mental anguish and emotional distress based upon section 1997e(e).  Whitted may, however, be entitled to recover nominal and/or punitive damages, notwithstanding that provision and his failure to establish physical injury, in the event that he is unable to

establish that a constitutional violation occurred.  *Thompson*, 284 F.3d at

418-19; *Petty*, 2002 WL 31458240, at *9.  Accordingly, all defendants are

entitled to dismissal of plaintiff's compensatory damage claims against

them, though only to the extent that he seeks recovery of damages for

mental anguish and emotional distress.

      E.    Procedural Due Process Claims

_____In his third cause of action, plaintiff alleges that he was denied a fair

and impartial parole hearing, thereby violating his right to procedural due

process.  Plaintiff asserts that the decision rendered by the Parole Board

represented an abuse of discretion and was "Predetermined, Vindictive,

Arbitrary, Capricious, Irrational Bordering on Impropriety, and in Violation

of the established Parole Guidelines[.]"  Complaint (Dkt. No. 1) at 5.  In

essence, plaintiff maintains that his parole denial was not based upon his

particular circumstances, but instead was influenced entirely by his status

as a violent felony offender and Governor Pataki's avowed policy in favor

of abolishing parole for all violent felons.  Plaintiff also maintains that

defendant Dennison, as Chairman of the New York State Board of Parole,

is liable for failing to ensure the fairness of the process, and further

asserts that the members of the Parole Board's Appellate Panel which

affirmed the denial of parole are responsible by virtue of their failure to take corrective measures to avoid the constitutional violation.  *Id.* at 5-7. Defendants maintain that these claims are not cognizable in light of the fact that in New York a prison inmate has no protected liberty interest in parole, and thus the procedural safeguards of the Fourth Amendment are not triggered by the November, 2004 parole denial.

"[T]he first inquiry in the analysis of an alleged due process violation is whether there exists a protected liberty interest" which is at stake in the case.  *Barna v. Travis*, No. CIV97CV1146, 1999 WL 305515, at *1 (N.D.N.Y. Apr. 22, 1999), *aff'd*, 239 F.3d 169 (2d Cir. 2001) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908 (1989)).  In a case such as this, the burden therefore initially rests with the plaintiff to show that he or she enjoys a protected liberty interest under New York's statutory parole scheme.  *Id.*  While the presence or absence in a state's parole provisions of language mandating release was once regarded as dispositive, *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11-13, 99 S.Ct. 2100, 2106-07 (1979), the Supreme Court has more recently held that the focus of the inquiry should be on the nature of the interest allegedly created by

18

the state.  *Sandin v. Conner*, 515 U.S. 472, 479-83, 115 S.Ct. 2293, 2298-2300 (1995).

New York's parole provisions militate against the finding of a protected liberty interest in being released on parole.  *Barna*, 1999 WL 305515, at \*2.  N.Y. Executive Law § 259-i(2)(c) affords broad discretion to the Parole Board in determining whether to grant or deny an inmate's application for release.  For this reason, the Second Circuit has held that the New York state parole process creates no legitimate expectation of release which warrants the full panoply of procedural due process protection.[6]  *Barna*, 239 F.3d at 171; *see Morel v. Thomas*, No. 02 CV 9622, 2003 WL 21488017, at \*4 (S.D.N.Y. June 26, 2003).  New York law does direct the Board to consider certain specified factors, but does not specify the weight to be attached to each factor.  N.Y. Exec. Law § 259-i(2)(c)(A); *Mitchell v. Conway*, No. 04 CV 1088, 2006 WL 508086, at \*4 (E.D.N.Y. Mar. 1, 2006).  Accordingly, "[t]he parole board may in its discretion find that any one of these factors, <u>including the severity of the inmate's offense of conviction</u>, outweighs the other factors in a particular

---

[6]      This is not to say that a prison inmate may constitutionally be denied parole for arbitrary and impermissible reasons.  *Boddie v. New York State Div. of Parole*, 288 F.Supp.2d 431, 440 (S.D.N.Y. 2003).

case and is grounds to deny parole."  *Mitchell*, 2006 WL 508086, at *4 (emphasis added)*.*

In his complaint plaintiff alleges his due process rights were violated when he was denied parole "specifically because of the crimes he was sentenced for."  Complaint (Dkt. No. 1) at 4.  Plaintiff contends that defendants Clarke, Bouey, and Grant denied his request for parole based on the influence of defendant Pataki's "crusade to abolish parole for all [v]iolent and [c]onvicted [f]elons[.]."[7]  Complaint (Dkt. No. 1) at 1.  Even accepting the allegations in plaintiff's complaint as true, defendants were entitled – indeed required – under New York Executive Law to consider the seriousness of plaintiff's crimes and deny parole on that basis, so long as the Board also considered the other relevant statutory factors.  *See Mitchell*, 2006 WL 508086, at *4.  In any event, the claim that plaintiff's denial of parole was arbitrary falls squarely within the ambit of *Preiser*, as one relegated to federal court review on petition for habeas relief, and is not cognizable under section 1983.  I therefore recommend dismissal of

_____

[7]     While plaintiff has referenced several excerpts of Governor George Pataki's annual messages as evidence of his policies disfavoring parole for violent offenders, nothing in the record suggests that political pressure or influence played a role in denial of plaintiff's parole in this case.  *See Mitchell*, 2006 WL 508086, at *5.

20

the due process claims alleged in plaintiff's complaint.

      F.    <u>Equal Protection Claims</u>

As an additional constitutional basis for his section 1983 claims, plaintiff also cites denial of his right to equal protection.  Specifically, plaintiff alleges his right to equal protection was violated by 1) defendant Pataki through his efforts to restrict parole for convicted violent felons; 2) defendants Palmer, Wegman, and Kolondy who falsified information in plaintiff's institutional records; 3) defendants Clarke, Bouey, Grant, and Dennison, through violation of established parole guidelines; and 4) defendants Lazzari, Loomis, and Vizzie, in their review of plaintiff's parole denial.

While plaintiff does not specifically allege constitutional mistreatment based on his membership in a particular class of individuals, cases have recognized that a successful equal protection claim may be brought under a "class of one" theory.  *Morel*, 2003 WL 21488017, at *5.  To establish a "class of one" equal protection violation, a plaintiff must show that "1) the person received different treatment than others similarly situated, and that this disparate treatment was 2) irrational and wholly arbitrary and 3) intentional."  *Id.*  In his complaint, plaintiff does seemingly allege that he

received different treatment than other prison inmates in terms of parole

denial, based upon the severity of his offense of conviction.  Such a

distinction, however, can hardly be characterized as an arbitrary or

irrational basis for making a parole determination.  *Id.*  Indeed, a response

to public and political pressure to mete out harsher penalties for violent

offenders, as plaintiff challenges in the instant case, has been found to be

entirely permissible in light of its relation to the consideration of the

statutory prescribed factor of "whether 'release is . . . [ ]compatible with

the welfare of society and will not . . . deprecate the seriousness of the

crime as to undermine respect for law."  *Morel*, 2003 WL 21488017, at *5

(quoting N.Y. Exec. Law § 259-i(2)(c)(A)).

Generously construed, plaintiff's equal protection claim could be

interpreted as alleging and challenging a differential in treatment between

violent and nonviolent offenders.[8]  Because prisoners do not as a group

constitute a suspect class, and no fundamental personal right is

implicated by the denial of parole, "disparate treatment by the state in

granting parole to violent and nonviolent prisoners is presumed

---

[8]     Plaintiff argues that he has been labeled a "violent felon" and as such has been
denied his right to due process and equal protection.  *See* Plaintiff's Memorandum
(Dkt. No. 35) at 15.

constitutional and need only be rationally related to a legitimate state interest." *Salahuddin v. Unger*, No. 04 CV 2180, 2005 WL 2122594, at *7 (E.D.N.Y. Sept. 2, 2005).  Here, the rational basis for differential treatment between violent and nonviolent offenders is "preventing the early release of potentially violent inmates", an undeniably legitimate state interest.  *Id.*

In sum, given plaintiff's inability to state a claim for equal protection under the "class of one" theory, and my finding that a rational basis exists for the differential treatment of violent and nonviolent offenders by the Parole Board, I recommend all plaintiff's equal protection claims be dismissed.

G.    Inaccurate/False Records

Plaintiff alleges in his complaint that defendants Palmer and Wegman, parole officers at Coxsackie Correctional Facility, falsified his records by labeling him as a sex offender subject to reporting requirements under the SORA, thereby violating his substantive due process rights.  Complaint (Dkt. No. 1) at 2-3.  Plaintiff also claims defendant Kolondy, a guidance counselor and coordinator of the facility's sex offender program, participated in the fabrication of his records and informed plaintiff he would have to register in the sex offender program

after release. *Id.* at 3.  Plaintiff asserts that this sex offender

characterization did not appear in his records until immediately prior to his

fourth parole hearing, upon which this complaint is primarily based.

Plaintiff's Memorandum (Dkt. No. 35) at 13.  Defendants counter that this

portion of the complaint is frivolous, since by his own admission plaintiff

does meet the requirements of the SORA.  Defendants' Memorandum

(Dkt. No. 26) at 8.

Courts have recognized that a prison inmate has a limited

constitutional right to have incorrect information expunged from his or her

prison records under certain circumstances.  *Paine v. Baker*, 595 F.2d

197, 201 (4th Cir.), *cert. denied*, 444 U.S. 925, 100 S. Ct. 263 (1979);

*LaBounty v. Coombe*, No. 95 CIV. 5592, 1999 WL 177438, at *2

(S.D.N.Y. Mar. 30, 1999); *aff'd*, 208 F.3d 203 (2d Cir. 2000) (Table);

*Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986) (citing

*Paine*).  In order to qualify for relief under this line of cases, a plaintiff

must establish 1) the existence of particular false information regarding

his or her prior criminal history or disciplinary record; 2) a probability that

the information will be relied upon in a constitutionally significant manner,

such as for parole decisions; and 3) that the prisoner, as a jurisdictional

predicate, has requested that the false information be expunged, but

prison officials have declined.[9]  *Paine*, 595 F.2d at 201-03; *LaBounty*,

1999 WL 177438, at *2; *Farinaro*, 642 F. Supp. at 282; *see also James v.

Scully*, No. 87 CIV. 6005, 1988 WL 34814, at *6 (S.D.N.Y. Apr. 5, 1988).

It is unclear whether, and if so to what extent, the Second Circuit would

follow *Paine* in a case such as this.  *Grant v. Ahern*, No. 03CV0593, 2005

WL 1936175, at *5 (N.D.N.Y. 2005) (Magnuson, J.).  Nonetheless, some

courts have allowed similar claims for injunctive relief to survive a Rule

12(b)(6) motion.[10]  *E.g.*, *Bodie v. Morgenthau*, 342 F.Supp.2d 193, 203-04

(S.D.N.Y. 2004) (finding plaintiff stated a claim for injunctive relief

pertaining to plaintiff's security classification, transfers and status in the

sex offender program); *Grant*, 2005 WL 1936175, at *5 (holding that

---

[9]     Plaintiff's amended complaint and submissions to the court are somewhat
equivocal as to whether a specific request was made to prison officials for adjustment
of the allegedly incorrect information.  At a minimum, however, a question exists
surrounding this element of the applicable test, and the court will resolve this ambiguity
in plaintiff's favor, for purposes of this motion.

[10]     In each of the two cases cited the court dismissed any related claim for
monetary damages.  *Grant*, 2005 WL 1936175, at *5 (determining defendants
protected from monetary damages under qualified immunity as no reasonable prison
official would have understood his or her actions violated existing law); *Bodie v.
Morgenthau*, 342 F.Supp.2d 193, 203 (S.D.N.Y. 2004) (holding plaintiff could not
pursue monetary damages against an individual defendant who lacks personal
involvement in the offense).

defendant had not demonstrated plaintiff failed to state a due process claim regarding his classification or placement in a sex offender program while incarcerated).

In this case, however, plaintiff's false records claim fails since his liability as a sex offender under the SORA is not inaccurate, but rather is wholly consistent with that enactment given the nature of hisconviction and its undisputed circumstances.  Plaintiff was convicted in a prior adversarial proceeding of a crime under circumstances where the state Legislature has dictated that registration as a sex offender is required. Under such circumstances, "[p]rison officials need do no more than notify such an inmate that he has been classified as a sex offender because of his prior conviction[.]"  *Neal v. Shimoda*, 131 F.3d 818, 831 (9th Cir. 1997).

_____In support of his challenge to being classified as a sex offender under New York law, plaintiff places heavy reliance upon *People v. Bell*, 3 Misc.3d 773, 778 N.Y.S.2d 837 (Bronx Co. Sup. Ct. 2003).  Whitted claims that his crimes of conviction, including kidnapping, lacked any sexual component or nexus, and thus the SORA's inclusion of him in its

26

sex offender registration requirement is overinclusive.[11]  Under the SORA,

kidnapping in the first and second degrees are includable as crimes for

which sex offender registration is required "provided the victim of such

kidnapping or related offense is less than seventeen years old and the

offender is not the parent of the victim[.]"  N.Y. Correction Law § 168-

a(2)(a)(i).  As plaintiff acknowledges, and the attachments to his complaint

reveal, he was convicted of both kidnapping in the first degree and

kidnapping in the second degree based upon taking, as hostages of,

children unrelated to him.  *See* generally Complaint (Dkt. No. 1)

Attachments.  Plaintiff was thus appropriately considered by prison

officials as a sex offender, as defined under the SORA.

     H.    Personal Involvement

     In their motion, defendants argue that plaintiff's complaint fails to

allege any involvement on the part of defendants Pataki and Dennison in

the constitutional violations alleged.

---

[11]     It should be noted that *Bell* involved the SORA's post-release reporting requirements.  3 Misc.2d at 774-75, 778 N.Y.S.2d at 839-40.  Plaintiff, however, does not allege that he has yet been determined to be the sex offender for purposes of the reporting obligations imposed under the SORA.  Accordingly, *Bell* does not apply in plaintiff's case, and in any event at best establishes only a violation of state law which is not constitutionally cognizable under section 1983.  *See Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff's complaint alleges that by virtue of his supervisory position, defendant Dennison is charged with the responsibility of ensuring all Parole Board hearings are conducted fairly and within the established guidelines.  Complaint (Dkt. No. 1) at 5.  Plaintiff's amended complaint is devoid of any allegations of complaints voiced by him to Dennison, regarding his particular circumstances, or that defendant's direct involvement in the violations alleged.  Indeed, plaintiff's complaint is unequivocal in stating that the sole basis for his claim against Dennison is the ultimate supervisory responsibility which he exercises as Chairman of the New York State Parole Board, plaintiff noting that

> Defendant Robert Dennison, acting as Parole Chairman of the New York State Board of Parole (Respondent [sic] Superior) has taken no action whatsoever to ensure that this plaintiff, or any other prisoner similarly situated, is guaranteed his Due Process Right to a Fair and Impartial Parole Board Hearing.  Nor has defendant Robert Dennison ensured that all Parole Board Hearings are conducted within the established guidelines.

Complaint (Dkt. No. 1) at 5.  These allegations are insufficient to implicate defendant Dennison in the constitutional violations alleged.

Plaintiff's allegations regarding personal involvement on the part of defendant Pataki likewise lack the requisite showing of his personal involvement to state a claim under § 1983.  Plaintiff claims that defendant Pataki has violated his due process and equal protection rights by his efforts and influence to abolish parole for all convicted violent felons. Complaint (Dkt. No. 1) at 1-2.  Specifically, plaintiff alleges that "[a]s a result of Defendant George Pataki's crusade to abolish parole for all Violent and Convicted Felons, as well as his influence over the New York State Board of Parole, Defendant George Pataki has Corrupted and Disrupted the Decision Making Process of the New York State Board of Parole."  Complaint (Dkt. No. 1) at 1.  In his papers, plaintiff quotes several Annual Messages of the Governor which he asserts consistently call for the abolishment of parole for all convicted violent felons.  Plaintiff's Memorandum (Dkt. No. 35) at 4.

While plaintiff does not allege any specific personal involvement of Governor Pataki in the denial of his parole, he obviously contends that there exists a policy or custom under which unconstitutional practices

occurred.  *See Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501;

*Williams*, 781 F.2d at 323-24.  As was discussed earlier, however,

inmates have no liberty interest in parole, and are protected only from a

denial based on arbitrary or impermissible reasons.  Not only may a

Parole Board permissibly find that the severity of the convicted offense

outweighs all other relevant factors under New York's parole guidelines, a

rational basis exists for differential treatment between violent and

nonviolent inmates – preventing the early release of potentially violent

inmates.

　　　　Based on the foregoing, I recommend all claims against defendants

Dennison and Pataki be dismissed for lack of requisite personal

involvement in the constitutional violations alleged.　　___

　　　　I.　　Immunity of Parole Officials

　　　　In their motion, the parole board official defendants claim entitlement

to absolute immunity from suits brought under § 1983 regarding parole

denials. Defendants' Memorandum (Dkt. No. 26) at 7.  Specifically,

defendants claim that the only allegations made against defendants

Clarke, Bouey, Grant, Lazzari, Loomis, and Vizzie relate to their official

duties to grant or deny parole, and as such they are entitled to immunity.

*Id.* at 7-8.  Plaintiff responds by arguing that parole officials only have absolute immunity when performing their official functions, but that in this instance they were not doing so, instead simply denying parole specifically for the crime for which the inmate has already been convicted. Plaintiff's Memorandum (Dkt. No. 35) at 8.

"The Second Circuit [has] . . . held that Parole Board officials are entitled to absolute immunity from liability for damages under § 1983 for their decisions to grant, deny, or revoke parole." *Barna*, 1999 WL 305515, at *2 (citing *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)). In order to enjoy such absolute immunity, parole officials must be performing an adjudicative function when taking the action under challenge.  *Montero*, 171 F.3d at 760.  Parole board officials are provided absolute immunity when performing judicial functions to preserve the impartiality of decision making, and to save such officials the time and expense of defending numerous baseless suits from disappointed inmates.  *Id.* at 760-61.

Plaintiff's claims against the various Parole Board commissioners in this instance are nothing more than poorly disguised claims that in performing their official functions, they deprived him of his constitutional

rights.  Such claims are precisely those to which the absolute immunity

steadfastly recognized by the courts is applicable.  *See Montero*, 171 F.3d

757 at 761.  For this reason I recommend dismissal of all claims against

the Parole Board defendants on the independent basis of absolute

immunity.

      J.    <u>Leave to Replead</u>

      Ordinarily, a *pro se* plaintiff whose claims are found to be insufficient

to withstand scrutiny under Rule 12(b)(6) should be granted with leave to

replead at least once to afford him or her the opportunity to cure any

perceived deficiencies and assert a proper claim.  *Branum*, 927 F.2d at

704-05.  When, however, in reviewing the factual allegations lodged in a

complaint, it is clear to the court that amendment would be futile, and that

no cognizable claim could be asserted based upon the circumstances

presented, leave to replead may be denied.  *Cuoco v. Moritsugu*, 222

F.3d 99, 112 (2d Cir. 2000) ("The problem with [pro se plaintiff's] causes

of action is substantive; better pleading will not cure it.  Repleading would

thus be futile.  Such a futile request to replead should be denied.")  In this

instance I make such a finding, concluding that the claims deemed

dismissible in this motion are futile and, accordingly, recommend that

plaintiff be denied the opportunity to replead.

IV.   SUMMARY AND RECOMMENDATION

    While defendants assert that plaintiff's claims in this action are not

properly brought under 42 U.S.C. § 1983, but instead must be set forth in

a petition seeking federal habeas relief, I find that given the nature of the

claims raised and relief sought, plaintiff could potentially state a

cognizable claim under section 1983.  Addressing the merits of those

claims, however, I recommend a finding that they lack merit.  Plaintiff's

claims seeking damages against the defendants in their official capacities

are subjected to dismissal under the Eleventh Amendment.  Additionally,

plaintiff's request for an award of compensatory damages for mental

anguish and emotional distress must be dismissed in view of his failure to

allege that he suffered physical injuries as a result of the constitutional

violations claimed.

    Addressing plaintiff's due process and equal protection claims, I find

that he has not stated a procedural due process claim in light of the fact

that prison inmates in New York have no recognizable liberty interest in

parole.  Additionally I find that plaintiff has failed to assert a cognizable

denial of equal protection claim either based upon the distinction between

violent and non-violent felony offenders or under a theory of a class of one.  I also find that the parole commission defendants are entitled to dismissal on the basis of absolute immunity, and that plaintiff's claims against defendants Dennison and Pataki should be dismissed based upon the lack of a showing of their personal involvement in the constitutional violations alleged.

Turning to plaintiff's substantive due process claims against defendants Palmer. Wegman, and Kolodny for falsification of prison records, based upon his classification as a sex offender, I find that that claim is also subject to dismissal, based upon plaintiff's inability to allege that the information relating to his sex offender status under New York's SORA is false.  It is thereby hereby

RECOMMENDED that defendants' motion to dismiss (Dkt. No. 26) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety, without leave to replead.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

David E. Peebles
U.S. Magistrate Judge

Dated:       August 18, 2006
             Syracuse, NY

G:\prisoner\Whitted.wpd

36